UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

THERESA DUFFEY, individually,
and on behalf of all others similarly
situated,

      Plaintiff,

v.                                Case No.:  2:20-cv-501-JES-MRM

SURFSIDE COFFEE COMPANY,
LLC,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court is the parties' Second Amended Joint Motion for Judicial Approval of Parties' [sic] Settlement Agreement and Stipulation of Dismissal with Prejudice.  (Doc. 42).  Plaintiff Theresa Duffey and Defendant Surfside Coffee Company, LLC request (again) that the Court approve their settlement and dismiss the case with prejudice.  (*Id.* at 1, 2).[1]

This is the parties' third bid to obtain court approval of their proposed settlement.  The first two bids did not succeed because the Court identified multiple deficiencies in the prior iterations of their motion and proposed settlement agreement.  (*See* Docs. 34-36, 38-39).  This Report and Recommendation focuses on

---

[1]  A pinpoint page citation to a document refers to CM/ECF pagination.

the parties' latest bid (*see* Doc. 42) for court approval of their revised settlement agreement (Doc. 42-1).

After careful review of the parties' submission and the record, the Undersigned respectfully recommends that the current motion (Doc. 42) be **GRANTED**.

## BACKGROUND

Plaintiff filed a one-count complaint against Defendants Surfside Coffee Company, LLC and Christopher Mellgren.  (*See* Doc. 1).[2]  Specifically, Plaintiff asserts a claim under the Fair Labor Standards Act ("FLSA") alleging that Defendants improperly classified her as exempt from overtime compensation eligibility and failed to compensate her properly for all hours worked in excess of forty hours per week.  (*See id*. at 5-7).  Plaintiff does not, however, allege a specific amount of damages.  (*See* Doc. 1).  Defendants filed an answer, denying Plaintiff's claims and asserting several affirmative defenses.  (*See* Doc. 6).

On March 9, 2021, Plaintiff filed a Notice of Voluntary Dismissal with Prejudice as to Mellgren.  (*See* Doc. 23).  On March 10, 2021, the Court entered an Order dismissing Mellgren with prejudice, (*See* Doc. 26), and judgment was entered the next day, (*See* Doc. 27).

---

[2]  Although Plaintiff brought her complaint on behalf of herself and others similarly situated, (*see* Doc. 1), Plaintiff did not seek collective action certification before settling and there are no opt-in plaintiffs whose rights may be affected by or should be considered in approving the current proposed settlement agreement.  Thus, the Court need only consider the proposed settlement of Plaintiff's individual claim.

On April 1, 2021, Plaintiff and the only remaining Defendant, Surfside Coffee Company, LLC, filed the first joint motion to obtain court approval of their proposed settlement. (*See* Doc. 34). The Court ultimately denied that motion without prejudice. (*See* Docs. 34-36). The parties then revised their settlement agreement (*see* Doc. 38-1) and renewed their motion (*see* Doc. 38), but the Court again denied it without prejudice (*see* Doc. 39). The parties then filed the current motion, seeking to address more fully the issues the Court highlighted as to their settlement. (*See* Doc. 42).

## LEGAL STANDARD

To approve the settlement of FLSA claims, the Court must determine whether the settlement is a "fair and reasonable [resolution] of a bona fide dispute" of the claims raised. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); 29 U.S.C. § 216. There are two ways for a claim under the FLSA to be settled or compromised. *Lynn's Food Stores*, 679 F.2d at 1352-53. The first is under 29 U.S.C. § 216(c), providing for the Secretary of Labor to supervise the payments of unpaid wages owed to employees. *Lynn's Food Stores*, 679 F.2d at 1353. The second is under 29 U.S.C. § 216(b) when an action is brought by employees against their employer to recover back wages. *Lynn's Food Stores*, 679 F.2d at 1353. When the employees sues, the proposed settlement must be presented to the district court for the district court's review and determination that the settlement is fair and reasonable. *Id.* at 1353-54. The Eleventh Circuit found settlements to be permissible

when employees sue under the FLSA for back wages. *Id.* at 1354. The Eleventh

Circuit held that lawsuit:

> provides some assurance of an adversarial context. The
> employees are likely to be represented by an attorney who
> can protect their rights under the statute. Thus, when the
> parties submit a settlement to the court for approval, the
> settlement is more likely to reflect a reasonable compromise
> of disputed issues than a mere waiver of statutory rights
> brought about by an employer's overreaching. If a
> settlement in an employee FLSA suit does reflect a
> reasonable compromise over issues, such as FLSA coverage
> or computation of back wages, that are actually in dispute;
> we allow the district court to approve the settlement in order
> to promote the policy of encouraging settlement of
> litigation.

*Id.*

## ANALYSIS

The Undersigned analyzes below the bona fide nature of the parties' dispute,

the monetary terms of the proposed settlement, the non-cash concessions included in

the settlement, and the payment of attorney's fees and costs contemplated by the

settlement.

## I.    Bona Fide Dispute

To begin, the Undersigned again finds that a bona fide dispute exists between

the parties. As stated in the first joint motion, Plaintiff alleges that she is "owed

wages under the [FLSA]," but Defendant "argue[s] that it did not violate the FLSA

(or any other wage and hour law, whether statutory, common law or otherwise), that

it had a good faith and/or reasonable basis for any violation(s) found, and that it

properly paid Plaintiff all wages owed." (Doc. 34 at 2).

4

In the current motion, the parties state that "Plaintiff was employed by the Defendant as a store manager for Dunkin' Donuts.  As such, she was responsible for the day to day management of her store.  As a store manager, she also supervised other employees and was responsible for hiring and firing."  (Doc. 42 at 2).  The parties then explain that "Plaintiff alleges that during part of her employment with Defendant, she was misclassified as exempt from overtime provisions of the FLSA and worked overtime hours for which she was not compensated."  (*Id.*).  For its part, however, "Defendant denies that Plaintiff was misclassified under the terms of the FLSA, asserts that she was properly compensated for all hours worked, and denies that it violated the FLSA or any other federal or state statutory or common law, rule, or regulation, and further deny [sic] that they [sic] engaged in any wrongdoing whatsoever."  (*Id.*).

The parties explain that their settlement:

> is the result of their bona fide compromise on a variety of disputes of law and fact, including, without limitation: (a) whether Plaintiff was properly classified under the FLSA; (b) whether Plaintiff worked any compensable time eligible for overtime pay[;] (c) whether Plaintiff could prove that she was misclassified[;] (d) whether any portion of Plaintiff's claims are barred by the statute of limitations; and (e) whether Defendants' good faith defenses justified any alleged violations of FLSA.  Notably, Plaintiff alleged that from March 3, 2015 to May 22, 2020 she was improperly classified as a salaried-exempt employee, earning an annual starting salary of $37,000 and an ending salary of $47,000. She further alleges that from that point until her termination on in May of 2020, she "regularly worked overtime hours," in the amount of approximately 8.19 overtime hours per week, as is reflected by her paystubs.

> Defendant denies that Plaintiff was improperly classified
> and contends that Plaintiff was properly paid for all hours
> worked.  Defendant's calculations of its settlement offer are
> based on the possibility that Plaintiff may have occasionally
> worked hours of overtime in a given workweek during a
> period of very few workweeks.

(Doc. 42 at 5-6).

In sum, there is no question that a bona fide dispute exists between the parties. As a result, the proper focus is whether the terms of the current revised settlement are fair and reasonable.

## II.   Monetary Terms

Plaintiff alleges that while employed by Defendant, she was misclassified as exempt from the overtime provisions of the FLSA and worked overtime hours for which she was not compensated.  (Doc. 1 at 3-5).  Plaintiff does not, however, allege in her complaint a specific sum owed to her.  (*See* Doc. 1).  Rather, Plaintiff generally alleges that she is entitled to "an overtime premium for each hour worked in excess of forty (40) per workweek" and "liquidated damages in an amount equal" thereto. (*See id*. at 5-6).

Plaintiff never filed answers to the Court's standard interrogatories for FLSA cases, despite being ordered to do so.  (*See* Doc. 7 at 2).  The Undersigned presumes this is because the parties were actively engaged in settlement negotiations around the time the interrogatory answers were due to be filed.  But in the current motion, Plaintiff avers that she answered some interrogatories in this case and that one of her answers included an accounting of her claim.  (*See* Doc. 42 at 10).  That accounting

is restated in the motion.  (*See id.*).  Based on fairly detailed calculations—while simultaneously acknowledging that she lacks access to relevant paystubs—Plaintiff estimates her total claim to be $41,881.06.  (*See id.* at 10-11).  This figure does not appear to include liquidated damages.  (*See id.*).

In any event, the monetary terms of the parties' settlement have not changed from the earlier iterations of the settlement agreement.  The current settlement agreement requires Defendant to pay a total of $14,500.00, "inclusive of all wages, damages, liquidated damages, attorneys' fees and costs, and which represents the amount of $5,000.00 in back wage to Plaintiff, $5,000.00 in liquidated damages to Plaintiff, and $4,500.00 in attorneys' fees and costs to Plaintiff's counsel."  (Doc. 42-1 at 5; *see also* Doc. 42 at 3).

To support the fairness and reasonableness of the monetary terms, the parties state:

> The complexity, expense, and length of future litigation also weigh in favor of this settlement.  Plaintiff and Defendant continue to disagree over the merits of the claims asserted by Plaintiff.  If the parties continue to litigate this matter, they would be forced to engage in additional motion practice, and possibly a trial in order to prove their claims and defenses.  This settlement, therefore, is a reasonable means for both parties to minimize future risks and litigation costs.
>
> The parties, who are represented by counsel experienced in employment litigation, recognize the benefit of a settlement rather than protracted litigation.
>
> *             *             *

> The Settlement Agreement was negotiated by experienced counsel at arm's length over the course of several months and after engaging in discovery and conducting settlement discussions.  The parties agree that it fairly and adequately resolves the claims in this matter.  The parties further agree that there was no undue influence, overreaching, collusion or intimidation in connection with the settlement.

(Doc. 42 at 3).

The parties also explain at length:

> Here, the parties jointly submit there has been sufficient investigation and exchange of information to allow counsel for Plaintiff and Defendant to evaluate the parties' claims and defenses and make recommendations to each party in agreeing upon the resolution of Plaintiff's claims as set forth in their Agreement.  After exchanging information and records from Plaintiff's employment and engaging in detailed settlement negotiations which lasted over the course of months, and in order to avoid the uncertainties of and costs of dispositive motions and trial, a compromise has been agreed upon with Plaintiff receiving a recovery acceptable to her in light of the misclassification issues, as well as the uncertainty regarding the calculation of damages. The Plaintiff has been advised that if she proceeds in this matter, she may prove all of the damages to which she claims entitlement, and also receive an equal amount in liquidated damages, or a jury may choose to credit the employer's position, and she may receive a lesser recovery or potentially no recovery at all.  In light of this uncertainty, as well as the possibility of protracted litigation, Plaintiff has agreed that the sum she is receiving in this settlement constitutes a reasonable an informed compromise of her claims.
>
> Without admitting that Plaintiff worked overtime hours for which she was not compensated, Defendant calculated proposed settlement figures that fully compensated Plaintiff for the average number of overtime hours possibly worked during the time period in which Plaintiff claims she was improperly classified.  The Parties continued to engage in settlement discussions based upon their independent

> calculations and ultimately came to an agreement on the amount of alleged unpaid wages and liquidated damages to which Plaintiff may be entitled.  Plaintiff agreed that the amount to be paid as part of alleged unpaid wages adequately and fully represented any amount likely owed to her.

(*Id.* at 7-8).

Unlike their prior motions, the parties have now provided an adequate "statement as to the number of hours and amount of lost wages claimed by Plaintiff."  *See Chavez v. BA Pizza, Inc.*, No. 2:18-cv-375-FtM-99MRM, 2018 WL 3151861, at *2 (M.D. Fla. June 12, 2018), *report and recommendation adopted*, 2018 WL 3135944 (M.D. Fla. June 27, 2018).  They have also adequately explained the difference between the settlement amount and the higher amount Plaintiff claims.  In this regard, the Undersigned finds that the monetary terms are fair and reasonable considering (1) the parties' difficulty calculating Plaintiff's damages based on available records, (2) Plaintiff's counsel's evaluation of the substantial risk that Plaintiff not recover anything if the case were to go to trial, and (3) the lack of any indicia of collusion.

For these reasons, the Undersigned finds that the monetary terms of the current settlement are fair and reasonable.

## III.   Non-Cash Concessions

The revised settlement agreement again contains several non-cash concessions that require scrutiny, including:  (1) mutual general releases; (2) a neutral reference provision; (3) a mutual non-disparagement provision; and (4) a jury trial waiver.

Some jurists in this District have stated that non-cash concessions by an employee affect both the "fairness" and "full compensation" components of a settlement and require their own fairness finding. *See Jarvis v. City Elec. Supply Co.*, No. 6:11-cv-1590-Orl-22DAB, 2012 WL 933057, at *5 (M.D. Fla. Mar. 5, 2012), *report and recommendation adopted*, 2012 WL 933203 (M.D. Fla. Mar. 20, 2012) (citing *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1348 (M.D. Fla. 2010)).

Even so, other jurists in this District have approved non-cash concessions in FLSA settlement agreements where the concessions were negotiated for separate consideration or where there is a reciprocal agreement that benefits all parties. *Bell v. James C. Hall, Inc.*, No. 6:16-cv-218-Orl-41TBS, 2016 WL 5339706, at *3 (M.D. Fla. Aug. 16, 2016), *report and recommendation adopted*, 2016 WL 5146318, at *1 (M.D. Fla. Sept. 21, 2016); *Smith v. Aramark Corp.*, No. 6:14-cv-409-Orl-22KRS, 2014 WL 5690488, at *4 (M.D. Fla. Nov. 4, 2014). The Undersigned addresses each of the non-cash concessions made by the parties under the current settlement below.

## A.    Mutual General Releases

The revised settlement agreement contains mutual general releases between Plaintiff and Defendant. (*See* Doc. 42-1 at 3-5). The releases are general and very broad. (*See id.*).

General releases in FLSA settlement agreements are problematic. *See Serbonich*, 2018 WL 2440542, at *2. Thus, the *Lynn's Food Stores* analysis requires a review of the proposed consideration as to each term and condition of the settlement,

including forgone or released claims.  *Shearer v. Estep Constr., Inc.*, No. 6:14-cv-1658-Orl-41, 2015 WL 2402450, at *3 (M.D. Fla. May 20, 2015).

As this Court has noted in other cases, however, evaluating unknown claims is a "fundamental impediment" to a fairness determination.  *Id.*; *see also Moreno*, 729 F. Supp. 2d at 1350-52.  Indeed, the Court typically "cannot determine, within any reasonable degree of certainty, the expected value of such claims."  *Shearer*, 2015 WL 2402450, at *3.  Thus, the task of determining adequate consideration for forgone claims is "difficult if not impossible."  *Id.* (quoting *Bright v. Mental Health Res. Ctr., Inc.*, No. 3:10-cv-427-J-37TEM, 2012 WL 868804, at *4 (M.D. Fla. Mar. 14, 2012)).

Despite these difficulties, such a provision may be approved when the Court can determine that it is fair and reasonable under the facts of the case.  *See, e.g.*, *Vela v. Sunnygrove Landscape & Irrigation Maint., LLC*, No. 2:18-cv-165-FtM-38MRM, 2018 WL 8576382, at *3-4 (M.D. Fla. Oct. 4, 2018), *report and recommendation adopted*, 2018 WL 8576384, at *1 (M.D. Fla. Nov. 7, 2018) (approving a general release, emphasizing that the parties' briefing specifically explained that "(1) the clauses were specifically bargained for between the parties and (2) the mutual general release was not a condition of their FLSA settlement"); *also Middleton v. Sonic Brands L.L.C.,* No. 6:13-cv-386-Orl-18KRS, 2013 WL 4854767, at *3 (M.D. Fla. 2013) (approving a settlement agreement that included a general release because the plaintiffs received separate consideration); *Bacorn v. Palmer Auto Body & Glass, LLC*, No. 6:11-cv-1683-Orl-28, 2012 WL 6803586, at *2 (M.D. Fla. Dec. 19, 2012), *report and recommendation*

*adopted*, 2013 WL 85066 (M.D. Fla. Jan. 8, 2013) (approving a settlement agreement that included a general release where the case also involved non-FLSA claims and the employee signed a general release in exchange for a mutual release from employer).

Here, there is no indication that Defendant is paying additional monetary consideration in exchange for the Plaintiff's general release.  Instead, the parties emphasize (1) the mutuality and reciprocity of the general releases the parties are providing to each other and (2) the fact that Defendant has agreed to a neutral reference provision inuring to Plaintiff's benefit.  (*See* Doc. 42 at 11-13).

The Undersigned finds the mutual general release language in the revised settlement agreement to be fair and reasonable because it was specifically bargained for between the parties, its mutuality causes it to inure to the benefit of both Plaintiff and Defendant, and Defendant's concession to a neutral reference provision benefitting Plaintiff serves as adequate additional consideration to support a general release from Plaintiff.  *See Vela*, 2018 WL 8576382, at *4.

**B.**    **Neutral Reference**

As noted above, the settlement agreement contains a neutral job reference provision, which states:

> In the event that a prospective employer requests an employment reference for the Plaintiff, the parties agree that Defendant will only provide dates of employment and/or position held and will not disclose the existence of this dispute or Settlement Agreement.  If a prospective employer asks if the Plaintiff is eligible for rehire, the Defendant and their agents shall state that it is the policy of the company to

confirm only employment dates and positions. The Defendant shall issue the Plaintiff a neutral reference on Surfside Coffee Company, LLC letterhead stating her dates of employment and position held.

(Doc. 42-1 at 8). This provision clearly inures to Plaintiff's benefit and is included to serve as added consideration for Plaintiff's general release of the Defendant. (*See id.*; *see also* Doc. 42 at 12). Jurists of this Court have approved neutral reference provisions under similar circumstances. *See, e.g.*, *Buntin v. Square Foot Mgmt. Co.*, LLC, No. 6:14-cv-1394-Orl-37GJK, 2015 WL 3407866, at *3 (M.D. Fla. May 27, 2015).

Thus, the Undersigned finds the neutral reference provision here to be fair and reasonable because it inures to Plaintiff's benefit and the parties negotiated it specifically to serve as added consideration for Plaintiff's general release of the Defendant.

## C.    Mutual Non-Disparagement

The revised settlement agreement contains a mutual non-disparagement provision. (Doc. 42-1 at 7-8). In their motion, the parties rely on the mutuality of the provision to support its fairness and reasonableness. (*See* Doc. 42 at 13).

This Court has observed that "[p]rovisions in a FLSA settlement agreement that call for . . . prohibiting disparaging remarks contravene FLSA policy and attempt to limit an individual's rights under the First Amendment." *Housen v. Econosweep & Maint. Servs., Inc.*, No. 3:12-Cv-461-J-34TEM, 2013 WL 2455958, at *2 (M.D. Fla. June 6, 2013) (citing *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227 (M.D.

Fla. Apr. 19, 2010); *Valdez v. T.A.S.O. Props., Inc.*, No. 8:09-cv-2250-T-23TGW, 2010 WL 1730700, at *1 n.1 (M.D. Fla. Apr. 28, 2010)).  Despite those concerns, the Court has approved non-disparagement provisions in connection with FLSA settlements when they are supported by adequate consideration, including some form of mutuality or reciprocity.  *See, e.g.*, *Bell v. James C. Hall, Inc.*, No. 6-16-cv-218-Orl-41TBS, 2016 WL 5339706, at *3 (M.D. Fla. Aug. 16, 2016), *report and recommendation adopted*, 2016 WL 5146318 (M.D. Fla. Sept. 21, 2016).

The Undersigned finds the revised non-disparagement provision to be fair and reasonable because it is mutual and contains reciprocal obligations that provide Plaintiff with an added, enforceable benefit she would not otherwise have.

### D.    Waiver of Jury Trial

The revised settlement agreement still contains a jury trial waiver, in which both Plaintiff and Defendant agree to "expressly waive their right to a trial by jury in the event of any dispute regarding the enforcement or construction of this Agreement."  (Doc. 42-1 at 7).

Notably, parties have a general right to a jury trial on breach of contract claims.  *Stitzel v. New York Life Ins. Co.*, No. 6:07-cv-147-Orl-22DAB, 2010 WL 11508117, at *3 (M.D. Fla. Mar. 25, 2010).  When a party waives a valid right to a jury trial as part of an FLSA settlement agreement, this Court has found that a plaintiff's waiver of a jury trial right does not render an agreement unfair or unreasonable so long as the plaintiff receives adequate consideration.  *See, e.g.*, *Lowery v. Auto Club Grp., Inc.*, No. 6:17-cv-359-Orl-40GJK, 2017 WL 3336464, at *4

(M.D. Fla. Aug. 3, 2017) (approving a jury waiver provision when the plaintiff received separate monetary consideration); *Fusic v. King Plastic Corp.*, No. 2:17-cv-390-FtM-38CM, 2018 WL 1725902, at *3 (M.D. Fla. Apr. 3, 2018), *report and recommendation adopted*, 2018 WL 1705645 (M.D. Fla. Apr. 9, 2018) (approving a jury waiver provision, finding that the defendant's reciprocal waiver constituted sufficient, independent consideration).

Moreover, a jury trial waiver is merely another type of non-cash concession, like a general release or a non-disparagement provision. As noted above, courts have found that when a non-cash concession is reciprocal such that it inures to the benefit of both parties, adequate consideration has been exchanged. *See, e.g.*, *Bell*, 2016 WL 5339706, at *3.

Here, because the waiver is mutual and reciprocal, applying to both Plaintiff and Defendant, the Undersigned finds that the mutuality of the waiver serves as adequate, independent consideration to Plaintiff to agree to the non-cash concession. Thus, the Undersigned finds that the waiver is fair and reasonable.

## IV.    Attorney's Fees and Costs

The payment of attorney's fees and costs under the revised settlement is the same as before. The revised settlement agreement states that Defendant agrees to pay $4,500.00 for attorney's fees and costs. (Doc. 42-1 at 5). In their first motion, the parties explained that the "attorneys' fees and costs were compromised, agreed upon separately and without regard to the amount paid to Plaintiff." (Doc. 34 at 4). In the current motion, the parties again state that the fees and costs "were negotiated

separately from Plaintiff's claims." (Doc. 42 at 2). They also state that "[t]he amount of attorneys' fees set forth in the Settlement Agreement will fully satisfy Plaintiff's attorneys' fees obligations." (*Id.* at 3). The parties also assert that the "[a]ttorney's fees and costs agreed upon to be paid by Defendants [sic] under the Parties' settlement were never (and are not) a percentage of any total recovery in this case such that there is no correlation between the amount of monetary consideration being paid to Plaintiff and the amount of attorneys' fees and costs being paid by Defendants on Plaintiff's behalf." (*Id.* at 8). The parties emphasize that "Plaintiff's attorney's fees and costs in this case are separate and apart from the amounts to be paid to Plaintiff under the Parties' Agreement, and the amounts being paid to Plaintiff under the Parties' settlement were negotiated based upon the value of all of the claims asserted, including the overtime wages claimed by Plaintiff." (*Id.* at 9).

As United States District Judge Gregory A. Presnell explained in *Bonetti v. Embarq Management Company*:

> [T]he best way to insure that no conflict [of interest between an attorney's economic interests and those of his client] has tainted the settlement is for the parties to reach agreement as to the plaintiff's recovery before the fees of the plaintiff's counsel are considered. If these matters are addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement.
>
> In sum, if the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claims; and (3) represents that the plaintiff's

> attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.

715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

Given the procedural posture of the case, the amount of fees and costs appears fair and reasonable. Additionally, based on the parties' representations, the Undersigned finds that the parties agreed upon the attorney's fees and costs without compromising the amount paid to Plaintiff.

## CONCLUSION

For these reasons, the Undersigned **RESPECTFULLY RECOMMENDS** that:

1. The parties' Second Amended Joint Motion for Approval of Parties' [sic] Settlement Agreement and Stipulation of Dismissal with Prejudice (Doc. 42) be **GRANTED**;

2. The revised Mutual Release and Settlement Agreement (Doc. 42-1) be approved as a fair and reasonable resolution of a bona fide dispute regarding Plaintiff's FLSA claim; and

3. The Clerk of Court be directed to dismiss this action with prejudice, terminate all pending motions, and close the file.

**RESPECTFULLY RECOMMENDED** in Fort Myers, Florida on January 22, 2022.

Mac R. McCoy
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.  A party wishing to respond to an objection may do so in writing fourteen days from the filing date of the objection. **To expedite resolution, the parties may also file a joint notice waiving the fourteen-day objection period.**

Copies furnished to:
Counsel of Record
Unrepresented Parties